UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JOSEPH CHHIM** | : | **DOCKET NO. 16-cv-1094** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **GOLDEN NUGGET LAKE CHARLES LLC** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 15] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendant Golden Nugget Lake Charles LLC ("Golden Nugget"). The plaintiff, Joseph Chhim ("Chhim"), opposes the motion with multiple responses. *See* docs. 21, 22, 25. We consider only those responses submitted before Golden Nugget's reply [doc. 26] was received as plaintiff neither sought nor received leave of court to supplement his original opposition.

For the following reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment be **GRANTED** and that the action be **DISMISSED WITH PREJUDICE** at plaintiff's cost.

### I.
#### BACKGROUND

Chhim, a United States citizen of Cambodian descent, filed the instant *pro se* employment discrimination suit in this court on July 25, 2016, against Golden Nugget, which operates a casino

resort in Lake Charles, Louisiana. Doc. 1. Chhim applied for a position as facilities supervisor (position code 48BR) at Golden Nugget through an online application system in June of 2014. At the time of his application Chhim was 69 years old. Doc. 15, att. 2, pp. 2, 17; *see* doc. 1, att. 1, p. 5 (EEOC discrimination charge completed by Chhim and providing birthdate).

After his online application was rejected, Chhim sent an email to Golden Nugget about the employment application process. Doc. 15, att. 2, p. 2. Golden Nugget Director of Human Resources Laura Jasso replied on July 7, 2014, writing that Golden Nugget had a policy of nondiscrimination and that employment decisions were "based on merit, qualifications, and abilities." *Id.* at 8. She stated that his application was rejected due to his failure to complete a behavioral assessment ("the assessment") required of all candidates and that he must complete this assessment if he wished to be considered for any future employment opportunities. *Id.* Golden Nugget Vice President of Human Resources Sherry Grodner then emailed Chhim on July 10, 2014, offering to let him complete the assessment and finalize his application for facilities supervisor. *Id.* at 3.

Chhim completed the assessment the same day that Grodner's email was sent, and scored in the twelfth percentile. *Id.* at 9–15, 16. IBM, the company that designed this assessment on behalf of Golden Nugget, had recommended that the thirtieth percentile be set as a minimum score to advance past the initial application stage. *Id.* at 3. An automated rejection was sent to Chhim via email on July 12, 2014. *Id.* at 16. Ultimately the position for which Chhim applied was never filled by Golden Nugget. *Id.* at 4.

On September 22, 2014, Chhim filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights.[1] Doc. 1, att. 1, p. 5. There he alleged discrimination on the basis of race, national origin, and age in Golden Nugget's decision not to hire him as facilities supervisor. *Id.* Golden Nugget submitted a written response, refuting Chhim's claims of discrimination. Doc. 15, att. 2, pp. 18–19. The EEOC issued a Dismissal and Notice of Right to Sue on April 28, 2016, and Chhim filed the instant complaint *in forma pauperis*.[2] Doc. 1, att. 1, p. 2; doc. 1.

Golden Nugget now moves for summary judgment, asserting that Chhim cannot set out a *prima facie* case of discrimination.

## II.
## LEGAL STANDARDS

### A. *Summary Judgment*

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by

---

[1] Chhim then applied for the position of facilities lead (position code 200BR) at Golden Nugget and received the same score on his assessment on August 12, 2014. Doc. 15, att. 2, p. 16. Another automated rejection was sent on August 14, 2014. *Id.* In this rejection email, he was told that the results of the assessment "indicate[] that you would not be considered for other positions in that job category (either manager or non-manager) at this time and no further assessments are required." Doc. 21, att. 1, p. 25. However, the email went on to state that, if the position for which he applied was a manager position, he could apply for non-manager positions and take the assessments required for those positions. *Id.* He does not complain about his rejection from this position, but instead uses Golden Nugget's responses to argue that Golden Nugget has sent him contradictory replies on whether he might apply for other positions.

[2] As Golden Nugget notes, Chhim has filed several complaints against employers and prospective employers under Title VII and the ADEA. *See* doc. 15, att. 1, n. 1 (collecting cases); *see also Chhim v. Univ. of Texas at Austin*, 2016 WL 154142, *1 n. 1 (W.D. Tex. Jan. 11, 2016) (noting that that matter was the sixteenth employment discrimination suit filed by Chhim since 1990). However, Golden Nugget does not request sanctions or argue that Chhim has been erroneously granted IFP status due to prior dismissals under 28 U.S.C. § 1915(e)(2)(B).

identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex*, 106 S.Ct. at 2553. There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Furthermore, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). However, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

### B. Title VII & ADEA

Chhim alleges that, by failing to hire him, Golden Nugget violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Doc. 1. In relevant part, Title VII provides that it is unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The

ADEA outlaws employment discrimination, including refusal to hire, on the basis of an individual's age. 29 U.S.C. § 623(a)(1).

Chhim's claims amount to allegations of disparate treatment based on his race, national origin, and age. *See* doc. 1, pp. 1–2. A disparate treatment claim requires proof of intentional discrimination. *See, e.g.*, *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) ("Disparate treatment refers to deliberate discrimination in the terms or conditions of employment . . . .") Because direct evidence of an employer's discriminatory intent is rare, plaintiffs must ordinarily prove their claims through circumstantial evidence. *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). In both ADEA and Title VII cases, this circumstantial evidence is analyzed through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973). *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). The Fifth Circuit applies the following "modified *McDonnell Douglas* approach" to employment discrimination cases:[3]

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate legitimate, non-discriminatory reasons for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007) (citation omitted).

---

[3] This modified *McDonnell Douglas* approach is applicable to both ADEA and Title VII claims. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). However, under intervening Supreme Court precedent, a plaintiff in an ADEA case must show that his age was the "but-for" cause of the adverse employment decision rather than a "motivating factor." *Moss*, 610 F.3d at 928 (citing *Gross v. FBL Fin. Svcs., Inc.*, 129 S.Ct. 2343, 2349–51 (2009)).

In order to set out a prima facie case of employment discrimination based on failure to hire, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for a position for which the employer was seeking applicants; (3) he was qualified for the position; (4) he was not selected for the position; and (5) the employer continued to seek applicants for the position or filled the position with someone outside of the protected class. *Goswami v. Unocal*, 2013 WL 5520107, *5 (S.D. Tex. Oct. 3, 2013) (citations omitted).

### III.
#### APPLICATION

Golden Nugget argues that Chhim cannot meet his burden of setting out a prima facie case as he was not qualified for the position based on his score on the assessment score and failure to meet the listed criteria for the position. It also notes that, because the facilities supervisor position was not filled, Chhim cannot show that Golden Nugget continued to seek applicants for the position or filled it with someone outside of his protected classes.

As best as we can construe his allegations in the complaint and briefing, Chhim argues that Golden Nugget has contradicted itself in interrogatory responses and response to his application for facilities lead (see note 1, *supra*) on whether a below-thirtieth percentile score served as an absolute bar to consideration. He also seems to assert that the assessment was not truly neutral, and maintains that he was qualified for the position of facilities supervisor based on his training and experience.[4] *See* doc. 21, pp. 8–21; doc. 22, att. 1, pp. 1–4.

---

[4] In addition to the assessment, Golden Nugget listed the following among the requirements for the position of facilities supervisor: (1) one to three years of experience in a casino environment, with one to three years in commercial or industrial facilities maintenance preferred; (2) possession of a high school diploma, with preference for a trade school certificate; and (3) supervisory responsibilities for maintenance technician, HVAC engineer, kitchen mechanic, electrician, plumber, painter, and maintenance dispatcher. Doc. 15, att. 2, pp. 5–7.

  Golden Nugget attaches Chhim's résumé submitted with his application. *See* doc. 15, att. 5. It shows that he had several years of experience as a custodial lead and custodial supervisor, in addition to three years of experience as assistant manager at a restaurant. *Id.* He also stated that he had received an associate's degree in Maintenance

Chhim's assertions are without merit. He makes various overlapping and confusing allegations and we review only those relevant to the disputed argument that he was properly disqualified from the position of facilities supervisor by virtue of his score on the assessment.[5]

Chhim alleges that Golden Nugget gave conflicting responses on whether his score on the assessment disqualified him from applying for positions below facilities supervisor. *See, e.g.*, doc. 22, att. 1, p. 2. However, this has no bearing on whether his score disqualified him from filling the position(s) for which he applied, and he provides nothing to refute Golden Nugget's evidence that it did. He maintains that the assessment was not actually a hiring requirement but offers no credible evidence in support of this contention. *See* doc. 25, p. 5. Instead, he only shows that there is no entry specifically relating to the assessment in Golden Nugget's employee handbook. *Id.*; *see* doc. 25, att. 1, pp. 8–11. He also provides no evidence in support of his assertion that the assessment was not neutral. His allegation that computer assessments must be given in a controlled environment is nonsensical and unsupported, and his contention that the assessment was programmed with discriminatory criteria is contradicted by competent summary judgment evidence,[6] in the form of a declaration pursuant to 28 U.S.C. § 1746, showing that the assessment

---

Technology and Executive Housekeeping and Supervisory Management. *Id.* Accordingly, his background appeared to be custodial rather than relating to facilities and ability to supervise same, despite some educational background in maintenance technology. Furthermore, nothing on his résumé showed any experience in a casino environment.

[5] Chhim also points to Golden Nugget's refusal to respond to interrogatories requesting the source of the assessment's answer key and the names of other applicants who failed the assessment and were warned by human resources not to apply for other positions. Doc. 25, pp. 5–6. He does not show, however, how this creates a dispute as to any material fact – rather, these contentions only point to his own ability to offer evidence in support of the assessment's alleged lack of neutrality or some other subterfuge by Golden Nugget.

[6] Chhim makes various unsupported allegations against the declarant, Elizabeth Guest, alleging that she is not competent to make any statement in support of this motion because she was not involved with Golden Nugget at the time he applied for the position of facilities supervisor. Doc. 25, p. 8. He also appears to allege that she has been convicted of a felony. *Id.* He offers nothing in support of these allegations. Guest states that she is the manager of corporate recruiting for a firm that provides human resources support to Golden Nugget and that she is familiar with Chhim's allegations based on that role. Doc. 15, att. 2, pp. 1–2. Chhim's allegations give us no basis for striking her sworn declaration.

was related to customer service, engagement, and retention, and did not ask any questions concerning an applicant's age, national origin, race, or any other protected characteristic. Doc. 15, att. 2, p. 2.

Moreover, the evidence produced by both parties (*infra*, note 4) shows that Chhim failed to meet other basic, objective qualifications of the position, in spite of Chhim's subjective belief that he was qualified. Accordingly, Chhim cannot show that he was a qualified applicant and therefore fails to make out a prima facie case.[7]

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 15] be **GRANTED** and that the action be **DISMISSED WITH PREJUDICE** at plaintiff's cost.

---

[7] Due to Chhim's failure to show that he was qualified for the position, there is no need to consider whether someone from outside of his protected categories was selected for the role of facilities supervisor. However, we note that Chhim's attempts to create an issue of fact here based on Golden Nugget's responses to the EEOC charge and Chhim's interrogatories and requests for production are unavailing. In a supplemental response (dated July 6, 2017) to Chhim's requests for production, Golden Nugget stated that, based on a thorough review of additional records, it had not hired anyone for the role of facilities supervisor and "ultimately chose not to hire any Facilities Supervisor." Doc. 22, att. 1, pp. 8–10. Chhim alleges that Golden Nugget's response to the EEOC charge, in a letter dated October 13, 2014, "indicated [that] Facilities Supervisor and Facilities Lead have opened , filled," [*sic*] but the copy of this letter that he attaches does not provide any statement on whether either position was currently open or filled. *Id.* at 2; *see id.* at 12–13. He purports to show a conflict between Golden Nugget's response that it had not hired a facilities supervisor in 2014, the year in which Chhim applied, and its response that the casino had to hire all staff by December 2014 in order to open. Doc. 25, p. 6; *see* doc. 25, att. 1, pp. 27–28. However, these answers do not contradict each other in light of Golden Nugget's declaration that it left the position of facilities supervisor unfilled.
   As Golden Nugget notes, a plaintiff cannot make out a prima facie case of hiring discrimination where it is shown that the position was never filled with someone outside of the protected class because the position was cancelled. *McClaine v. Boeing Co.*, 544 Fed. App'x 474, 477 (5th Cir. 2013). Additionally, a plaintiff's unsupported belief that a person outside of the protected class was hired for the position is not enough to carry his burden on this issue. *Id.* Here there is no record evidence to show that Golden Nugget hired anyone to fill the role of facilities supervisor, and Golden Nugget has submitted competent summary judgment evidence to show that it never filled the position. *See* doc. 15, att. 2, p. 4. Accordingly, even if Chhim could show that he was a qualified applicant, he would still fail to make out a prima facie case because of this issue.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 12th day of September, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE